John L. Amsden, Esq.
Justin P. Stalpes, Esq.
Sydney E. Best, Esq.
Conner C. Bottomly, Esq.
BECK AMSDEN & STALPES, PLLC
610 Professional Drive
Bozeman, MT 59718
T: 406-586-8700 / F: 406-586-8960
amsden@becklawyers.com
justin@becklawyers.com
sydney@becklawyers.com
conner@becklawyers.com

*Attorneys for Plaintiffs*

* * * * * * *

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA, MISSOULA DIVISION

* * * * * * *

| | |
|---|---|
| TODD F. STEVENSON, an individual on behalf of himself, and as grantor of the Todd Stevenson 2013 Irrevocable Family Trust and the Todd F. Stevenson Irrevocable Life Insurance Trust; TERRI L. STEVENSON, an individual on behalf of herself, and as grantor of the Terri L. Stevenson 2016 Irrevocable Family Trust; TODD J. STEVENSON, an individual; and JOSEPH D. STEVENSON, an individual on behalf of himself, and as grantor of the Joseph D. Stevenson Irrevocable Life Insurance Trust;<br><br>       Plaintiffs,<br><br>    v. | Cause No. _____<br><br><br>**COMPLAINT FOR DAMAGES AND JURY DEMAND** |

| | |
|---|---|
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY; THE PENN MUTUAL LIFE INSURANCE COMPANY; THE PENN INSURANCE AND ANNUITY COMPANY; SUMMIT FINANCIAL GROUP; GP CAPITAL PARTNERS LLC; THE BURGESS GROUP, INC.; JOSHOA Q. GARDNER, an individual; and JOHN DOES 1–5;<br><br>       Defendants. | |

Plaintiffs, by and through their counsel of record, complain and allege as follows:

## INTRODUCTION

Plaintiffs are third-generation Miles City funeral home professionals. With the help of Plaintiffs and their multi-generational family business, thousands of eastern Montanans have laid their loved ones to rest with dignity and peace. This lawsuit is about Plaintiffs' effort to protect their legacy and pass the family business to the next generation, and how Defendants thwarted that effort by directing Plaintiffs down a path of financial ruin.

Through misrepresentation, omission, and/or plain professional incompetence, Defendants convinced Plaintiffs to place their family's savings into volatile financial schemes known as premium-financed life insurance policies. The premium-financed life insurance policies Defendants solicited and sold to Plaintiffs

in this case masqueraded as responsible, safe, and tax-friendly estate planning tools. With initial cash outlays from Plaintiffs, Defendants promised each Plaintiff's respective life insurance policy or policies would pay for themselves in two steps: (1) funding for premiums would be borrowed from a third-party lender; (2) some of the initial outlays of Plaintiffs' cash would be invested and earn returns that would not only pay back the third-party lender, plus interest, plus fees, but also steadily increase the value of the policy itself.

What Defendants didn't tell Plaintiffs—an eastern Montana family of fiscally conservative, investment-risk-averse, financially unsophisticated morticians—is the premium-financed "pay for itself" scheme is anything but as Defendants promised. Instead, when interest rates rose from historically low levels, depressed returns on the invested initial cash outlays could not keep up paying back the premium loans, interest, and service fees. Plaintiffs quickly and irreparably found themselves pulled deep underwater on loans, interest, and fees Defendants promised the policies themselves would cover.

The financial catastrophe into which Defendants led Plaintiffs could have been avoided had Defendants conducted any sort of reasonable financial analysis, including but not limited to: determining whether the life insurance products were appropriate for Plaintiffs in the first instance; determining whether the life insurance products, if appropriate for Plaintiffs, were appropriately sized and concentrated;

determining whether premium-financing was an appropriate and/or necessary means for Plaintiffs to pay for the life insurance products; and looking back sufficiently far to produce and provide to Plaintiffs an accurate picture of interest rate trends and the impact of those trends if they continued into the future. But Defendants didn't, and Defendants ignored Plaintiffs' risk-averse financial goals. Instead, Defendants chose to take the massive commissions and fees that came with encouraging Plaintiffs to take a bet with their family's money and future that no one in their right mind would make, had they been provided an accurate picture of what that bet entailed.

**PARTIES**

I.    **Plaintiffs**[1]

1.    Todd F. Stevenson ("Todd Stevenson"), individually and as the grantor of the Todd Stevenson 2013 Irrevocable Family Trust and the Todd F. Stevenson Irrevocable Life Insurance Trust, resides in Miles City, Montana.

2.    Terri L. Stevenson, individually and as the grantor of the Terri L. Stevenson 2016 Irrevocable Family Trust, resides in Miles City, Montana.

3.    Todd J. Stevenson ("T.J. Stevenson"), individually, resides in Miles City, Montana.

---

[1] Throughout this Complaint, Plaintiffs are collectively referred to as "Plaintiffs" or "the Stevenson Family."

4.      Joseph D. Stevenson, individually and as the grantor of the Joseph D. Stevenson Irrevocable Life Insurance Trust, resides in Miles City, Montana.

## II.    Defendants

5.      Defendant Massachusetts Mutual Life Insurance Company ("Mass Mutual") is a Massachusetts Corporation, with its principal place of business in Springfield, Massachusetts.

6.      Defendant The Penn Mutual Life Insurance Company ("Penn Mutual") is a Pennsylvania Corporation, with its principal place of business in Horsham, Pennsylvania.

7.      Defendant The Penn Insurance and Annuity Company ("Penn Annuity") is a Delaware Corporation, with its principal place of business in Horsham, Pennsylvania.

8.      Defendant Joshoa Q. Gardner ("Gardner") is an individual. On information and belief, Gardner has resided in Sheridan, Wyoming at all times relevant to this lawsuit.

9.      On information and belief, Defendant Summit Financial Group ("Summit") is a sole proprietorship and/or a d/b/a of Gardner, with its principal place of business in Sheridan, Wyoming.

10.     Defendant GP Capital Partners LLC ("Capital") is a Wyoming limited liability company, with its principal place of business in Sheridan, Wyoming.

11.    Defendant The Burgess Group, Inc. ("Burgess") is a Utah corporation, with its principal place of business in Salt Lake City, Utah. On information and belief, Burgess does business by, among other things, soliciting loans for premium-financed insurance products.

12.    Doe Defendants are entities and/or individuals whose respective identities and roles in this case are currently unknown. The Stevenson Family therefore bring this Complaint against John Does 1–5 by fictitious names and will seek leave to amend if and when their true identities and roles are ascertained, together with additional and appropriate allegations.

### JURISDICTION AND VENUE

13.    This Court has personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k). Defendants are subject to the jurisdiction of Montana's courts of general jurisdiction, pursuant to Montana's Long Arm Rule, Mont. R. Civ. P. 4(b), and the Due Process Clause of the U.S. Constitution, including because Defendants are: found in Montana; sell products or services in Montana; transact business in Montana; have committed acts resulting in the accrual of tort or contract actions in Montana; own, use, or possess property, or an interest therein, in Montana; and/or entered into contracts in Montana; and because the claims asserted herein arise out of Defendants' activities within the Montana.

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as complete diversity exists between Plaintiffs and Defendants, and the amount in controversy, exclusive of costs and attorney fees, exceeds the sum of $75,000.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the District of Montana.

16.     Venue is proper in this division, because venue is proper in Missoula County under the laws of the State of Montana. D. Mont. L. R. 3.2(b). Specifically, at least one Defendant has a resident agent located in Missoula County. Mont. Code Ann. § 25-2-122(2)(c) ("[T]he proper place of trial for a tort action is . . . the county in which the corporation's resident agent is located[.]"); *and see* Mont. Code Ann. § 25-2-177 ("If there are two or more defendants in an action, a county that is a proper place of trial for any defendant is proper for all defendants[.]").

## ALLEGATIONS COMMON TO ALL COUNTS

## I.     Gardner Advised, Solicited, and Sold the Stevenson Family on Financial and Insurance Products.

17.     Plaintiffs incorporate every other paragraph of this Complaint as though fully set forth herein.

18.     Since at least 2002, Gardner has been a Montana licensed insurance agent.

19.     At all relevant times, Gardner (CRD #4473299) was the owner of Summit and/or Capital.

20.     At all relevant times, Summit was a financial services firm professing to abide by fiduciary standards and provide professional advisory services for retirement planning and legacy planning.

21.     Gardner held himself out as the principal owner of Summit. On information and belief, Gardner later ceased doing business as Summit and began operating as Capital.

22.     At all relevant times, Gardner has been affiliated with Burgess, a third-party lending firm.

23.     At all relevant times, Gardner was a registered agent of Mass Mutual and Summit.

24.     At all relevant times, Gardner was authorized to produce and sell insurance policies on behalf of Penn Annuity and Penn Mutual.

25.     At all relevant times, Gardner was expressly authorized by Mass Mutual, Penn Annuity, and Penn Mutual to act as their agent for the purpose of soliciting the public to purchase insurance products and to act as their agent in soliciting, accepting, and preparing applications for insurance policies.

26.     Mass Mutual, Penn Annuity, and Penn Mutual further authorized Gardner to act as their agent in: preparing life insurance policy illustrations for life

insurance policies; presenting those illustrations to proposed insureds; and submitting those illustrations with the respective insurer's applications.

27.     In early 2014, Gardner, doing business as Summit, began soliciting Todd Stevenson to purchase life insurance.

28.     Gardner held himself out as a "strategic advisor" to the Stevenson Family with respect to wealth management, investment, retirement, and insurance planning. In that role, Gardner purported to analyze the Stevenson Family's total investment portfolio. Gardner's services included evaluating and recommending suitable life insurance options to achieve the Stevenson Family's retirement and estate-planning goals.

29.     The Stevenson Family conveyed to Gardner they were risk averse, at least with respect to investment strategy.

30.     After purporting to have carefully evaluated the Stevenson Family's financial status, retirement goals, risk tolerance, and suitability for the transactions, Gardner recommended that the Stevenson Family create irrevocable trusts that would purchase the life insurance policies which are the subject of this lawsuit.

31.     Gardner represented that the life insurance policies he solicited and ultimately sold to the Stevenson Family fit their stated investment goals and risk-averse mentality, promising the policies constituted safe investments.

32.     The type of life insurance policies Gardner solicited and eventually sold the Stevenson Family are known as premium-financed life insurance policies.

33.     The "premium-financed" aspect of life insurance policies at the center of this lawsuit refers to a leveraged funding arrangement, wherein the purchaser of the policy borrows money from a third-party lender to pay the policy premiums.

34.     Gardner provided to the Stevenson Family information, forms, and illustrations presented by Burgess and other Defendants with respect to the premium-financed life insurance policies Gardner ultimately convinced the Stevenson Family to purchase.

35.     On information and belief, agents of Burgess were involved in directly soliciting the Stevenson Family as well. Specifically, on information and belief, Burgess directed and instructed Gardner with respect to soliciting the Stevenson Family to purchase the premium-financed life insurance policies at the center of this lawsuit.

36.     On information and belief, Burgess recommended to the Stevenson Family a Utah law firm for the purpose of creating irrevocable trusts.

37.     On information and belief, Burgess solicited loan packages from US Bank and later from WinTrust to fund the premium-financed life insurance policies at the center of this lawsuit.

38.     On information and belief, Burgess then transferred the loan packages to Gardner to "pitch" the Stevenson Family on the packages.

39.     Neither Gardner nor Burgess nor any other Defendant gave the Stevenson Family accurate (or any) information about the details of the loan packages solicited by Burgess and sold to the Stevenson Family by Gardner, including that the interest rates on the loans could fluctuate to rates far greater than the 2% range conveyed to the Stevenson Family.

40.     On information and belief, Gardner and Burgess collected fees and/or commissions for their financial planning services provided to the Stevenson Family with respect to the premium-financed life insurance policies at the center of this lawsuit.

## II.    Gardner, Summit, Capital and/or Burgess Acted at All Relevant Times as Agents of the Insurance Entity Defendants.

41.     Mass Mutual, Penn Annuity, and Penn Mutual authorized Gardner, Summit, Capital, and/or Burgess to act on their behalf for the purpose of soliciting and accepting the premium-financed life insurance policies at the center of this lawsuit.

42.     For example, on letters and documents sent to the Stevenson Family concerning the premium-financed life insurance policies at the center of this lawsuit, Mass Mutual, Penn Annuity, and Penn Mutual listed Gardner, Summit, Capital and/or Burgess as the servicing producer or the presenter of the policies.

43.     For another example, Mass Mutual, Penn Annuity, and Penn Mutual authorized Gardner, Summit, Capital, and/or Burgess to act as their agents for the purposes of preparing policy illustrations for the premium-financed life insurance policies at the center of this lawsuit, and for submitting those illustrations with policy applications.

44.     Further, Mass Mutual, Penn Annuity, and Penn Mutual prepared the relevant policy statements listing Gardner, Summit, Capital and/or Burgess as the designated contacts.

45.     In short, Mass Mutual, Penn Annuity, and Penn Mutual put Gardner, Summit, Capital, and/or Burgess in a position that allowed them to make representations on behalf of the insurers for purposes of soliciting policies, soliciting and preparing applications, acting as a point of contact for the insurers' policy holders relative to their policy statements, and in preparing and presenting policy illustrations.

46.     The Stevenson Family reasonably believed that Gardner, Summit, Capital and/or Burgess were acting as authorized agents of Mass Mutual, Penn Annuity, and Penn Mutual at all relevant times.

47.     While acting as the actual or apparent authorized agents of Mutual, Penn Annuity, and Penn Mutual in soliciting and preparing the applications for the premium-financed life insurance policies at the center of this lawsuit, and in

presenting the illustrations to the Stevenson Family, Gardner, Summit, Capital, and/or Burgess made catastrophic misrepresentations to the Stevenson Family about the propriety and security of the life insurance policies at the center of this lawsuit.

## III. The Policies

### A.    The 2014 Todd Stevenson Mass Mutual Life Insurance Policies

48.    Plaintiffs incorporate every other paragraph of this Complaint as though fully set forth herein.

49.    In 2014, Gardner recommended that Todd Stevenson create the Todd Stevenson 2013[2] Irrevocable Family Trust.

50.    Thereafter, on Gardner's recommendation, the Todd Stevenson 2013 Irrevocable Family Trust purchased two Mass Mutual Life Insurance Policies (together, the "2014 Todd Policies").

51.    The 2014 Todd Policies are numbered 21364008 and 21359917 and owned by the Todd Stevenson 2013 Irrevocable Family Trust, with Todd Stevenson as the insured.

52.    The 2014 Todd Policy No. 21359917 had an initial face value of $7,500,000, and was apparently issued on August 11, 2014.

---

[2] Although named the Todd Stevenson 2013 Irrevocable Family Trust, the Trust Agreement is dated June 12, 2014.

53.    2014 Todd Policy No. 21364008 had an initial face value of $10,000,000, and was apparently issued on August 19, 2014.

54.    Gardner and a Burgess agent were paid a commission on the sale of the 2014 Todd Policies.

55.    Burgess' role and participation in the sale of the 2014 Todd Policies was not at that time disclosed or explained to the Stevenson Family, and they did not have the opportunity to consult directly with the Burgess agent.

56.    The 2014 Todd Policies' performance illustrations were produced by Mass Mutual and presented to the Stevenson Family by Gardner or those acting on Gardner's or the other Defendants' behalf.

**B.    The 2017 Terri L. Stevenson Life Insurance Policies**

57.    Plaintiffs incorporate every other paragraph of this Complaint as though fully set forth herein.

58.    In 2017, Gardner recommended that Terri L. Stevenson create the Terri L. Stevenson 2016 Irrevocable Family Trust.

59.    Thereafter, on Gardner's recommendation, the Terri L. Stevenson 2016 Irrevocable Family Trust purchased a Mass Mutual Life Insurance Policy and a Penn Mutual Life Insurance Policy (together, the "2017 Terri Policies") from Gardner.

60.     The 2017 Terri Mass Mutual Policy No. 22384117 had an initial face value and initial supplement rider value totaling $10,000,000, and was apparently issued on January 5, 2017.

61.     The 2017 Terri Penn Mutual Policy No. 21359917 had an initial face value plus initial supplement rider value totaling $5,000,000, and was apparently issued on January 18, 2017.

62.     The 2017 Terri Policies are owned by the Terri L. Stevenson 2016 Irrevocable Family Trust, with Terri L. Stevenson as the insured.

63.     On information and belief, Gardner and other Defendants were paid a commission on the sale of the 2017 Terri Policies.

**C.      The 2017 T.J. Stevenson Life Insurance Policies**

64.     Plaintiffs incorporate every other paragraph of this Complaint as though fully set forth herein.

65.     In 2017, on Gardner's recommendation, T.J. Stevenson purchased a Mass Mutual Life Insurance Policy and a Penn Annuity Accumulation Builder Select Universal Indexed Life Insurance Policy (together, the "2017 T.J. Policies").

66.     The 2017 T.J. Penn Annuity Policy No. 92433340 had an initial face value of $10,000,000, and was apparently issued on October 17, 2017.

67.    The 2017 T.J. Mass Mutual Policy No. 22486207 had an initial face value plus an initial supplement rider value totaling $2,000,000, and was apparently issued on December 1, 2017.

68.    The 2017 T.J. Policies are owned by T.J. Stevenson, with T.J. Stevenson as the insured.

69.    On information and belief, Gardner and other Defendants were paid a commission on the sale of the 2017 T.J. Policies.

**D.    The 2017 Todd Stevenson Guaranteed Life Insurance Policy**

70.    Plaintiffs incorporate every other paragraph of this Complaint as though fully set forth herein.

71.    In 2017, Gardner recommended that Todd Stevenson create the Todd F. Stevenson Irrevocable Life Insurance Trust.

72.    Thereafter, on Gardner's recommendation, the Todd F. Stevenson Irrevocable Life Insurance Trust purchased a Penn Annuity Guaranteed Life Insurance Policy (the "2017 Todd Policy") from Gardner.

73.    The 2017 Todd Policy No. 27469330 had an initial face value plus initial supplement rider value totaling $11,500,000, and was apparently issued on August 25, 2017.

74.    The 2017 Todd Policy No. 27469330 is owned by the Todd F. Stevenson Irrevocable Life Insurance Trust, with Todd F. Stevenson as the insured.

75.    On information and belief, Gardner and other Defendants were paid a commission on the sale of the 2017 Todd Policy.

**E.    The 2017 Joseph D. Stevenson Life Insurance Policies**

76.    Plaintiffs incorporate every other paragraph of this Complaint as though fully set forth herein.

77.    In 2017, Gardner recommended that Joseph D. Stevenson create the Joseph D. Stevenson Irrevocable Life Insurance Trust.

78.    Thereafter, on Gardner's recommendation, the Joseph D. Stevenson Irrevocable Life Insurance Trust purchased a Penn Mutual Guaranteed Life Insurance Policy (the "2017 Joseph Policy") from Gardner.

79.    The 2017 Joseph Policy No. 2746927 had an initial face value plus initial supplement rider value totaling $11,500,000.00 and was apparently issued on August 25, 2017.

80.    The 2017 Joseph Policy is owned by the Joseph D. Stevenson Irrevocable Life Insurance Trust, with Joseph D. Stevenson as the insured.

81.    On information and belief, Gardner and other Defendants were paid a commission on the sale of the 2017 Joseph Policy.

**IV.    The Problem with the Life Insurance Policies Defendants Solicited and Sold to the Stevenson Family**

82.    Collectively, the Stevenson Family purchased the 2014 Todd Policies, the 2017 Terri Policies, the 2017 T.J. Policies, the 2017 Todd Policy, and the 2017

Joseph Policy (together, the "Life Insurance Policies") based on Gardner's and other Defendants' evaluations, recommendations, illustrations, projections, and instructions.

83.    Upon information and belief, the Stevenson Family was not provided with all pages of the illustrations, which were required to be disclosed to the Stevenson Family before the Life Insurance Policies were purchased.

84.    By withholding certain pages of the illustrations, the Stevenson Family was given a false or misleading representation of the likely performance of the Life Insurance Policies.

85.    At no time did Gardner or the other Defendants discuss or communicate other insurance options or lower non-financed insurance options.

86.    Upon information and belief, the leveraged financed insurance options allowed for Gardner to procure and sell larger policies that resulted in larger commissions to Gardner, Summit, Capital, and/or Burgess.

87.    Gardner and the other Defendants did not adequately disclose the risks associated with the leveraged scheme underlying the Life Insurance Policies, including the risk associated with an increase in interest rates.

88.    The success of the premium-financed life insurance scheme depends on the costs on the premium loans over the long term being less than the returns on the

insurance policies. Otherwise, the policyholder will be forced to come up with the significant capital necessary to pay back the premium loans, interest, and fees.

89.    Defendants did not make these risks apparent to the Stevenson Family in any way, nor were the risks apparent from the face of the Life Insurance Policies themselves.

90.    The Life Insurance Policies were not suitable to achieve the Stevenson Family's stated goals of tax-free income at retirement and risk-averse estate-planning. Due to the underlying investment components that drove the respective lenders' valuations of these products, the Life Insurance Policies would underperform the product offerings and would be insufficient to outpace the ever-growing debt service of the loans.

91.    For purposes of structuring these types of products, the Defendants should have, *inter alia*, determined whether these products were actually appropriate for Plaintiffs in the first instance, determined that the products, if appropriate, were appropriately sized and consolidated, determined that premium-financing was the appropriate way for Plaintiffs to pay for these products, and examined a long-term record of the same or similar lending sources to assess the probability of success.

92.    However, on information and belief, Defendants instead only examined and provided the Stevenson Family with illustrations based on a short-term lending environment and/or an environment with historically low interest rates.

93.    On information and belief, the Life Insurance Policies and the debt service of the Stevenson Family's loans had outpaced the valuation of the products by roughly $8,000,000, which will continue to increase over time.

94.    On information and belief, the Stevenson Family have incurred damages that are three-to-ten times the outpaced loan amount when the Life Insurance Policies are compared to safer and more suitable investments.

95.    Plaintiffs relied on the professional advice of Defendants when they decided to buy the Life Insurance Policies.

96.    The Stevenson Family had the right to rely on Defendants to properly advise them regarding the risks, benefits, and suitability of the Life Insurance Policies.

97.    The Stevenson Family did not know and could not have known that Defendants failed to competently advise them.

98.    The Stevenson Family did not know and could not have known that Defendants provided them with false and misleading assurances about the safety and suitability of the Life Insurance Policies.

99.    Further, due to the nature of Defendants' misconduct, the Stevenson Family did not and could not have discovered Defendants misconduct and the damages they suffered as a result of Defendants' misconduct until the 2023 renewal period, at the earliest.

## COUNTS

### COUNT ONE – NEGLIGENCE
#### ORDINARY AND PROFESSIONAL
#### (All Defendants)

100.   Plaintiffs hereby incorporate all other paragraphs of this Complaint as though fully set forth herein.

101.   Every Defendant owed a duty of ordinary care as well as reasonable care to the Stevenson Family in compliance with the standards of care applicable to finance and insurance professionals.

102.   Mass Mutual, Penn Annuity, and Penn Mutual are vicariously liable for the negligent acts, misrepresentations, and omissions of their apparent and actual agents, Gardner, Summit, Capital, and/or Burgess.

103.   Defendants breached the duty of reasonable care by, *inter alia*, soliciting, recommending, and selling the Life Insurance Policies to the Stevenson Family on the false notion that the Life Insurance Policies were suitable and appropriate for the Stevenson Family's financial circumstances and stated goals, and misrepresenting the interest rates applicable to the loan packages solicited and sold to the Stevenson Family.

104.   Defendants' breach of the duty of ordinary and reasonable professional care caused the Stevenson Family to suffer catastrophic financial damages.

105.   The Stevenson Family did not cause or contribute to their damages in any way.

106.   The Stevenson Family is entitled to compensation for the damages caused by Defendants' misconduct.

## COUNT TWO – NEGLIGENT MISREPRESENTATION
### (All Defendants)

107.   Plaintiffs hereby incorporate all other paragraphs of this Complaint as though fully set forth herein.

108.   Mass Mutual, Penn Annuity, and Penn Mutual are vicariously liable for the acts, misrepresentations, and omissions of their apparent and actual agents, Gardner, Summit, Capital, and/or Burgess.

109.   Defendants solicited, recommended, and sold the Life Insurance Policies to the Stevenson Family on the false notion and misrepresentation that, *inter alia*, the Life Insurance Policies were suitable and appropriate for the Stevenson Family's financial circumstances and stated goals, without any reasonable grounds for believing the Life Insurance Policies were appropriate and suitable for the Stevenson Family's financial circumstances and stated goals, and further misrepresented the interest rates applicable to the loan packages solicited and sold to the Stevenson Family.

110.   Defendants' misrepresentation about the suitability of the Life Insurance Policies and applicable interest rates for the loan packages secured were

made with the intent to induce the Stevenson Family into relying on the misrepresentation, inasmuch as Defendants expected the Stevenson Family would purchase the Life Insurance Policies based on the misrepresentation.

111.   Given the disparity of information and power, the Stevenson Family had no way of learning the falsity of Defendants' misrepresentation about the suitability of the Life Insurance Policies.

112.   The Stevenson Family acted in reliance upon the truth of Defendants' misrepresentation by purchasing the Life Insurance Policies, believing the Life Insurance Policies to be suitable for their stated goals.

113.   As a result of the Stevenson Family's reliance on Defendants' misrepresentation, the Stevenson Family suffered catastrophic financial damages.

114.   The Stevenson Family did not cause or contribute to their damages in any way.

115.   The Stevenson Family is entitled to compensation for the damages caused by Defendants' negligent misrepresentation.

## COUNT THREE – BREACH OF FIDUCIARY DUTY
### (All Defendants)

116.   Plaintiffs hereby incorporate all other paragraphs of this Complaint as though fully set forth herein.

117.   Based on the special relationship between financial and insurance advisors and their clients, every Defendant owed the Stevenson Family the duty of

a fiduciary, including, but not limited to: the duty of loyalty and utmost good faith; the duty of candor; the duty to refrain from self-dealing; the duty to protect the Stevenson Family from harm; the duty to refrain from wielding power to cause the Stevenson Family harm; the duty of fair and honest dealing; and the duty of full disclosure.

118.   Mass Mutual, Penn Annuity, and Penn Mutual are vicariously liable for fiduciary breaches by their apparent and actual agents, Gardner, Summit, Capital, and/or Burgess.

119.   Defendants breached the duty of fiduciaries by, *inter alia*: failing to act fairly and equitably in their transactions with the Stevenson Family; failing to act with utmost good faith; placing their financial interests ahead of the Stevenson Family's; and failing to fully and fairly disclose all material information to the Stevenson Family. More specifically, Defendants: recommended the Stevenson Family purchase the Life Insurance Policies which were not suitable for their circumstances and stated goals; failed to fully and fairly disclose the substantial risks associated with the Life Insurance Policies; and failed to fully and fairly disclose other Defendants' involvement and benefits received from the Stevenson Family's purchase of the Life Insurance Policies.

120.   Defendants' breaches caused catastrophic financial damages to the Stevenson Family.

121.  The Stevenson Family did not cause or contribute to their damages in any way.

122.  The Stevenson Family is entitled to compensation for the damages caused by Defendants' misconduct.

## COUNT FOUR – STATUTORY VIOLATIONS
### MONT. CODE ANN. §§ 33-18-201, *et seq.*, 33-14-103, *et seq.*
### (All Defendants)

123.  Plaintiffs hereby incorporate all other paragraphs of this Complaint as though fully set forth herein.

124.  At all relevant times, Defendants engaged in trade and/or commerce within Montana. Defendants, either directly or indirectly, did sell, market, offer, or control intangible things of value that directly and indirectly affect the people of Montana.

125.  Accordingly, Defendants owe certain duties and are prohibited from certain conduct under the Montana Unfair Trade Practices Act, Mont. Code Ann. § 33-18-201, *et seq.* and the Montana Consumer Protection Act, Mont. Code Ann. § 30-14-103, *et seq.*

126.  Mass Mutual, Penn Annuity, and Penn Mutual are vicariously liable for the statutory violations of their apparent and actual agents, Gardner, Summit, Capital, and/or Burgess.

127.   Under Montana statutory law*, supra*, Defendants are prohibited from making or causing to be made any estimate, illustration, circular, sales presentation, omission, comparison, or statement that: misrepresents pertinent facts or insurance policy provisions; misrepresents the benefits, advantages, conditions, or terms of any insurance policy; misrepresents the dividends or share of the surplus to be received on any insurance policy; is misleading or is a misrepresentation as to the financial condition of any person or as to the legal reserve system upon which any life insurer operates.

128.   Under Montana statutory law*, supra*, Defendants are also prohibited from making or causing to be made any advertisement, announcement, or statement containing any assertion, representation, or statement with respect to the business of insurance or with respect to any person in the conduct of the person's insurance business that is untrue, deceptive, or misleading.

129.   Under Montana statutory law*, supra*, Defendants are also prohibited from making or issuing, or causing to be made or issued any written or oral statement misrepresenting or making incomplete comparisons as to the terms, conditions, or benefits contained in any policy for the purpose of inducing or attempting, or tending to induce the policyholder to lapse, forfeit, surrender, retain, exchange, or convert any insurance policy.

130.    Defendants breached their statutory duties by, *inter alia,* by making misrepresentations to the Stevenson Family related to the Life Insurance Policies. Defendants statutorily prohibited misrepresentations include, but are not limited to: falsely representing the Life Insurance Policies as suitable for the Stevenson Family's circumstances and stated goals; and falsely representing the Life Insurance Policies would perform at a certain level without explaining the substantial risks associated with the Life Insurance Policies, including premium-financed interest rate risk, policy performance risk, bank financing risk, carrier risk, lapse risk, and tax audit risk.

131.    Defendants also hid material facts from the Stevenson Family related to the Life Insurance Policies, including but not limited to: the substantial risks associated with the Life Insurance Policies; whether the Life Insurance Policies were appropriate for the Stevenson Family in the first instance; whether the Life Insurance Policies were appropriately sized and consolidated; whether premium-financing was the appropriate means for paying for the Life Insurance Policies; the nature and details of the loan packages; and other Defendants' involvement in the Life Insurance Policies.

132.    Defendants' statutory violations also include the following misconduct:

   a.    Defendants misrepresented the terms, benefits, conditions, or advantages of the insurance policy, in violation of Mont. Code Ann. §33-18-202 (1);

b. Defendants misrepresented the dividends or shares of the surplus to be received on any insurance policy, in violation of Mont. Code Ann. § 33-18-202 (2);

c. Defendants failed to state material facts necessary to make other statements not misleading, considering the circumstances under which the statements were made, in violation of Mont. Code Ann. § 33-18-202;

d. Defendants directly or indirectly made, published, or disseminated, published, or disseminated assertions, representations, or statements that were untrue, deceptive, or misleading, in violation of Mont. Code Ann. § 33-18-203; and,

e. Defendants sold, distributed, created, offered, and/or advertised products to the people of Montana that were deceptive and unfair, ultimately providing an illusory product that lacks any value whatsoever but that enables Defendants to obtain a monetary benefit while denying anything of value to consumers.

133. Defendants were false, misleading, and deceptive. The Stevenson Family relied on these misrepresentations to their detriment.

134. Defendants' omissions were intended to induce the Stevenson Family into purchasing the Life Insurance Policies. The Stevenson Family would not have entered into these transactions if Defendants had disclosed the truth to them.

135. Defendants' misconduct rises to the level of statutory unconscionability. Defendants' misrepresentations and omissions took advantage of the Stevenson Family's lack of knowledge, ability, experience, or capacity to a grossly unfair degree. Under the circumstances, Defendants' misconduct cannot be characterized as advice, judgment, or opinion.

136.   Upon information and belief, the unfair and deceptive acts and practices of Defendants constitute acts in concert, and all Defendants are jointly liable for the damages resulting from their acts or practices.

137.   The Stevenson Family suffered catastrophic financial damages as a result of Defendants' violations of the Montana Unfair Trade Practices Act and the Montana Consumer Protection Act.

138.   Defendants' misconduct was committed knowingly. Accordingly, Defendants are liable to the Stevenson Family for additional damages of up to three times the economic damages as permitted by the Montana Unfair Trade Practices and the Montana Consumer Protection Act, as well as attorneys' fees.

139.   The Stevenson Family is entitled to all available statutory relief for Defendants' statutory violations, including treble damages and attorneys' fees.

## COUNT FIVE – NEGLIGENCE *PER SE*
### (All Defendants)

140.   Plaintiffs hereby incorporate all other paragraphs of this Complaint as though fully set forth herein.

141.   As previously alleged, Defendants owe certain duties and are prohibited from certain conduct under the Montana Unfair Trade Practices Act, Mont. Code Ann. § 33-18-201, *et seq.* and the Montana Consumer Protection Act, Mont. Code Ann. § 30-14-103, *et seq.*

142.   Mass Mutual, Penn Annuity, and Penn Mutual are vicariously liable for the statutory violations of their apparent and actual agents, Gardner, Summit, Capital, and/or Burgess.

143.   As previously alleged, Defendants violated Montana statutory law by, *inter alia,* making misrepresentations to the Stevenson Family related to the Life Insurance Policies. Defendants statutorily prohibited misrepresentations include, but are not limited to: falsely representing the Life Insurance Policies as suitable for the Stevenson Family's circumstances and stated goals; and falsely representing the Life Insurance Policies would perform at a certain level without explaining the substantial risks associated with the Life Insurance Policies, including premium-financed interest rate risk, policy performance risk, bank financing risk, carrier risk, lapse risk, and tax audit risk.

144.   Defendants also hid material facts from the Stevenson Family related to the Life Insurance Policies, including but not limited to: the substantial risks associated with the Life Insurance Policies; whether the Life Insurance Policies were appropriate for the Stevenson Family in the first instance; whether the Life Insurance Policies were appropriately sized and consolidated; whether premium-financing was the appropriate means for paying for the Life Insurance Policies; the nature and details of the loan packages; and other Defendants' involvement in the Life Insurance Policies.

145.    Defendants' statutory violations also include the following misconduct:

    a.    Defendants misrepresented the terms, benefits, conditions, or advantages of the insurance policy, in violation of Mont. Code Ann. §33-18-202 (1);

    b.    Defendants misrepresented the dividends or shares of the surplus to be received on any insurance policy, in violation of Mont. Code Ann. § 33-18-202 (2);

    c.    Defendants failed to state material facts necessary to make other statements not misleading, considering the circumstances under which the statements were made, in violation of Mont. Code Ann. § 33-18-202;

    d.    Defendants directly or indirectly made, published, or disseminated, published, or disseminated assertions, representations, or statements that were untrue, deceptive, or misleading, in violation of Mont. Code Ann. § 33-18-203; and,

    e.    Defendants sold, distributed, created, offered, and/or advertised products to the people of Montana that were deceptive and unfair, ultimately providing an illusory product that lacks any value whatsoever but that enables Defendants to obtain a monetary benefit while denying anything of value to consumers.

146.    The foregoing statutes were enacted to protect the class of people to which the Stevenson Family belongs, *i.e.,* Montana consumers of financial and insurance products.

147.    The Stevenson Family's injuries are of the kind the foregoing statutory scheme was enacted to prevent.

148.   The foregoing statutory scheme was enacted and intended to regulate members of the class of financial and insurance professionals to which Defendants belong.

149.   As a direct result of Defendants' violation of Montana statutes enacted to protect Montana consumers of financial and insurance products, the Stevenson Family suffered injuries, entitling them to monetary damages and all available equitable relief.

## COUNT SIX – CONSTRUCTIVE FRAUD
### (All Defendants)

150.   Plaintiffs hereby incorporate all other paragraphs of this Complaint as though fully set forth herein.

151.   Mass Mutual, Penn Annuity, and Penn Mutual are vicariously liable for the acts, misrepresentations, and omissions of their apparent and actual agents, Gardner, Summit, Capital, and/or Burgess.

152.   Every Defendant owed a duty to provide reasonable care to the Stevenson Family in compliance with the standards of care applicable to finance and insurance professionals.

153.   Defendants breached the duty of reasonable care by, *inter alia*, soliciting, recommending, and selling the Life Insurance Policies to the Stevenson Family on the misleading and false notion that the Life Insurance Policies were

suitable and appropriate for the Stevenson Family's financial circumstances and stated goals.

154.   Defendants' breach of the duty of reasonable care caused the Stevenson Family to suffer catastrophic financial damages.

155.   Defendants' breach of the duty of reasonable care resulted in Defendants' gaining an advantage over Plaintiffs by way of misleading Plaintiffs into paying Defendants' vast sums of money for the unsuitable Life Insurance Policies.

156.   The Stevenson Family did not cause or contribute to their damages in any way.

157.   The Stevenson Family is entitled to compensation for the damages caused by Defendants' constructive fraud.

### COUNT SEVEN – FRAUD
### (All Defendants)

158.   Plaintiffs hereby incorporate all other paragraphs of this Complaint as though fully set forth herein.

159.   Mass Mutual, Penn Annuity, and Penn Mutual are vicariously liable for the acts, misrepresentations, and omissions of their apparent and actual agents, Gardner, Summit, Capital, and/or Burgess.

160.   Defendants made representations to the Stevenson Family about the Life Insurance Policies, including but not limited to: representing that the Life

Insurance Policies were suitable for the Stevenson Family's circumstances and stated goals; and representing that the Life Insurance Policies would perform at a certain level without explaining the substantial risks associated with the policies.

161. Defendants' representations were false, based on the Stevenson Family's circumstances and risk tolerance, as well as relevant industry data and financial forecasts.

162. Defendants' representations were significant and material; Defendants' representations went to the heart of the Stevenson Family's decisions to purchase the Life Insurance Policies, and the Stevenson Family would not have purchased the Life Insurance Policies absent Defendants' representations. Further, Defendants' representations were not subjective opinions, but factual assurances of the suitability and propriety of the Life Insurance Policies for the Stevenson Family.

163. Defendants knew the representations about the Life Insurance Policies' suitability were false, because Defendants had access both to the Stevenson Family's materials, statements, and goals, as well as industry data and financial forecasts.

164. Defendants' intended the Stevenson Family to rely on the representations about the Life Insurance Policies, as evidenced by Defendants' solicitation, recommendation, and encouragement that the Stevenson Family purchase the Life Insurance Policies based on their purported suitability.

165.   The Stevenson Family was unaware of the falsity of Defendants' representations about the Life Insurance Policies, nor could the Stevenson Family have made themselves aware of the falsity based on their relative lack of informational access, knowledge, and financial power.

166.   The Stevenson Family relied on Defendants' representations; the Stevenson Family would not have purchased the Life Insurance Policies absent the representations.

167.   The Stevenson Family had a right to rely on Defendants' representations. Defendants hold themselves out as insurance and financial professionals, promising the Stevenson Family to care for their insurance and financial needs.

168.   The Stevenson Family consequently and proximately suffered catastrophic financial damages as a result of Defendants' representations and the Stevenson Family's reliance thereon.

169.   The Stevenson Family is entitled to compensation for the damages caused by Defendants' fraud.

## COUNT EIGHT – FRAUDULENT INDUCEMENT
### (All Defendants)

170.   Plaintiffs hereby incorporate all other paragraphs of this Complaint as though fully set forth herein.

171.   Mass Mutual, Penn Annuity, and Penn Mutual are vicariously liable for the acts, misrepresentations, and omissions of their apparent and actual agents, Gardner, Summit, Capital, and/or Burgess.

172.   Defendants made misrepresentations, false representations, concealed facts, and/or otherwise failed to disclose facts about the Life Insurance Policies, including but not limited to: representing that the Life Insurance Policies were suitable for the Stevenson Family's circumstances and stated goals; and representing that the Life Insurance Policies would perform at a certain level without explaining the substantial risks associated with the policies.

173.   Defendants knew their misrepresentations, false representations, concealment, and/or nondisclosure to and from the Stevenson Family were false.

174.   Defendants intended their misrepresentations, false representations, concealment, and/or nondisclosure would induce the Stevenson Family to purchase the Life Insurance Policies.

175.   The Stevenson Family reasonably and justifiably relied on Defendants' misrepresentations, false representations, concealment, and/or nondisclosure and would not have purchased the Life Insurance Policies absent Defendants' misconduct.

176.   As a result of Defendants' misrepresentations, false representations, concealment, and/or nondisclosure, the Stevenson Family has suffered catastrophic financial damages.

177.   The Stevenson Family is entitled to compensation for the damages caused by Defendants' fraudulent inducement.

## COUNT NINE – UNJUST ENRICHMENT
### (All Defendants)

178.   Plaintiffs hereby incorporate all other paragraphs of this complaint as though fully set forth herein.

179.   Mass Mutual, Penn Annuity, and Penn Mutual are vicariously liable for the acts, misrepresentations, and omissions of their apparent and actual agents, Gardner, Summit, Capital, and/or Burgess.

180.   Through   Defendants'   misrepresentations,   omissions,   and/or negligence, Plaintiffs conferred upon Defendants a substantial monetary benefit, including but not limited to monies to purchase the unsuitable Life Insurance Policies and commissions, fees, interest, and other costs.

181.   Defendants certainly knew or appreciated the benefit conferred on them by way of the Stevenson Family's purchase of the Life Insurance Policies and attendant payment of fees, interest, and other costs.

182.   Defendants retained the benefit the Stevenson Family conferred and continues to confer on them in a circumstance that would make it inequitable for Defendants to retain the benefit without payment of its value.

183.   The Stevenson Family is entitled to a remedy for Defendants' unjust enrichment, including but not limited to imposition of a constructive trust.

## COUNT TEN – PUNITIVE DAMAGES
### (All Defendants)

184.   Plaintiffs hereby incorporate all other paragraphs of this Complaint as though fully set forth herein.

185.   Mass Mutual, Penn Annuity, and Penn Mutual are vicariously liable for the acts, misrepresentations, and omissions of their apparent and actual agents, Gardner, Summit, Capital, and/or Burgess.

186.   Defendants deliberately acted in conscious or intentional disregard of, or indifference to, the high probability of injury to the Stevenson Family, by ignoring the Stevenson Family's stated goals and risk aversion and soliciting and encouraging the Stevenson Family to place themselves in catastrophic financial risk with respect to the Life Insurance Policies.

187.   Defendants acted with actual malice and oppression, because Defendants knew or should have known their conduct, acts, and omissions would cause the Stevenson Family harm.

188.   In engaging in the conduct described herein, Defendants acted with utter and complete disregard for the rights and interests of the Stevenson Family.

189.   Defendants repeatedly placed their own interests ahead of the interests of the Stevenson Family.

190.   Defendants' conduct was so malicious, willful, and egregious as to justify an award of punitive or exemplary damages to punish Defendants and to serve as an example to other similarly situated entities that conduct of the kind engaged in by Defendants is unacceptable in society and will not be tolerated.

191.   Defendants should pay punitive damages in an amount sufficient to deter such conduct by these Defendants and others similarly situated.

## COUNT ELEVEN – RESCISSION AND RESTITUTION
### (All Defendants)

192.   Plaintiffs hereby incorporate all other paragraphs of this Complaint as though fully set forth herein.

193.   Consent to the terms of the Life Insurance Policies and all other contracts entered to effect the purchase of the Life Insurance Policies was not real or free and was given under mistake or fraud.

194.   Defendants improperly induced the Stevenson Family to contract.

195.   The Stevenson Family seek recission of the Life Insurance Policies and all other contracts entered to effect the purchase thereof and restitution of all funds, fees, and interest charged by Defendants.

## COUNT TWELVE – FOR AN ACCOUNTING
### (All Defendants)

196.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as though fully set forth herein.

197.    An action for an accounting is appropriate to pursue disgorgement of unjust gains and/or discovery of information necessary to evaluate one's rights.

198.    Defendants had a special relationship with the Stevenson Family, including a fiduciary relationship, as described above.

199.    Defendants have engaged in lucrative business transactions while ignoring and contravening their contractual, fiduciary, and ordinary obligations of care to the Stevenson Family.

200.    Defendants exercise exclusive control over much of the information and documents necessary for the Stevenson Family to ascertain and exercise the full extent of their rights and claims against Defendants.

201.    The Stevenson Family seek information regarding the payments, fees, and interest taken by Defendants.

202.    An accounting will demonstrate the amounts of payments, fees, and interest Defendants wrongfully took from the Stevenson Family, which the Stevenson Family is entitled to recoup.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.      For all damages, including treble, equitable, monetary, and punitive damages, proximately caused by Defendants' conduct;

2.      For Defendants to be held jointly and severally liable;

3.      For attorney's fees, costs, and interest as allowed by law without limitation;

4.      For pre-judgment and post-judgment interest at the highest rate allowed by law; and

5.      For any such other relief as may be permitted by law or equity or deemed appropriate by this Court.

**JURY DEMAND**

Plaintiffs request a jury trial of all matters appropriately tried to a jury.

DATED this 31st day of July 2024.

/s/ John L. Amsden
BECK AMSDEN & STALPES, PLLC

*Attorneys for Plaintiffs*